The witness proved that the usage among grain dealers at Cantwell's Bridge was, when farmers send grain without any special contract it is received on a market for sixty days, and the market price at the end of that time governs, unless the seller prices it in the mean time. He did not know whether such was the usage of Whitby & Zelefro.

---

## JOHN SMITH and MARGARET his wife *vs.* PETER JOHNSON.

A declaration laying a promise to husband and wife, on a note to the wife dum sola, is good.

THE action was on a promissory note made by the defendant to Margaret Johnson, now the wife of Smith. The execution of the note was admitted, but

*Mr. Huffington* objected to the admissibility of the note under a declaration laying a promise to Smith and wife.

*Mr. Bayard* said the objection would be more proper in arrest of judgment. But he said the declaration was in the proper form, stating the making and delivery of the note to the wife, the obligation and consequent promise to pay husband and wife.

The plaintiff had a verdict, which—

The court, upon consideration, sustained, and gave judgment accordingly.

---

## WILLIAM T. TALLEY *vs.* JOSEPH MOORE.

A will sustained on an issue of devisavit vel non, though one of the witnesses denied his signature, and ignored the execution.

THIS was an issue from the Register of devisavit vel non, to try the will of Andrew McCoy.

The will was dated January 5, 1830; was in the handwriting of Isaac Grubb; attested by him and Benjamin Lenderman, by his mark; signed by the testator by his mark; and bequeathed all the property to William Talley and Herman H. Talley.

Isaac Grubb testified that he wrote the will and wrote the testator's name, he being unable to write. Neither of the witnesses could write, and Grubb wrote their names also. The will, signatures and all, were in his handwriting. The legatees were his nephews. He proved that the testator was perfectly sane; that he made no suggestions to him whatever, and that he had no known relatives.

Benjamin P. Lenderman, one of the witnesses to the will, positively denied that he had ever signed it by his mark, or had ever attested any will of McCoy's. He remembered the time Grubb and Talley were at McCoy's;—Grubb was up in McCoy's room; that he went for Talley at McCoy's request, and Talley went for Grubb. He saw no paper like a will, and heard nothing about it.

The will was shown to this witness, with his name and mark to it.

Witness.—That is not my mark. I never saw that paper. I never put my mark to any paper in the presence of Andrew McCoy or Isaac Grubb.

Elihu Talley, the executor of the will and father of the devisees, proved that Benjamin Lenderman came after him to go to Andrew McCoy's. He went, and McCoy asked him to write his will. He declined because he did not know how; but offered to go for any one McCoy would name. He mentioned Isaac Grubb, and then witness went for him. Grubb read the will to McCoy, and asked him if it was right. He said yes. There was some talk about the witnesses. McCoy made his mark in the presence of Lenderman and this witness and Grubb, and Lenderman also made his mark in their presence. The will was sealed up and delivered to this witness by McCoy's orders. This was seventeen or eighteen years before the testator's death.

The case was submitted without argument, and the jury found in favor of the will.